**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**February 2, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

———————————————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MIRANDA LYNNE REE,

    Defendant - Appellant.

No. 21-7068
(D.C. No. 6:20-CR-00086-RAW-1)
(E.D. Okla.)

———————————————————

**ORDER AND JUDGMENT**[*]
———————————————————

Before **HARTZ**, **KELLY**, and **MORITZ**, Circuit Judges.
———————————————————

Miranda Ree appeals from her jury conviction for second-degree murder in Indian country. *See* 18 U.S.C. §§ 1111(a), 1151, 1153. She argues that the district court erred in admitting evidence of her apparent lack of remorse. Finding no reversible error, we affirm.

**Background**

One afternoon in September 2018, Ree and Bryan Chaney, along with Kasy Allen, Mary Edens, and Shaun Williams, were smoking methamphetamine inside a house in Broken Arrow, Oklahoma. Ree and Chaney lived in that house, and they had

———————————————

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

been arguing that day.[1] At some point, Chaney retrieved a Coleman camping torch powered by an eight-to-twelve-inch propane tank that he and others used to smoke methamphetamine. Over the course of 45 or 50 minutes, Chaney repeatedly walked past the living room couch where Ree, Allen, and Williams were sitting while igniting the torch and pointing it at Ree; Williams testified that Chaney did this six to eight times, and Ree estimated it was eight to ten times.

Chaney never burned Ree or anyone else, though Ree and Williams said they could feel the heat emanating from the torch. Allen and Edens testified that they heard Ree say she would stab Chaney if he did not stop. Williams and Ree testified that Ree simply said she would hurt Chaney if he did not stop.

Eventually, Williams pulled out his car keys from his pocket and told Ree they could leave. Williams testified that Chaney then walked past the living room couch, "sa[id] something about who [Ree] was dating at the time," ignited the torch, and left the living room area through a hallway. R. vol. 3, 115. Ree agreed to leave with Williams, but she first wanted to use the bathroom. So she walked down the same hallway Chaney had just entered, where the bathroom was located.

According to Ree, as she walked down the otherwise-empty hallway, Chaney came out of his bedroom and walked into the hallway with the torch. She testified that she told Chaney to leave her alone, but "he kept coming at [her]." *Id.* at 272. Ree

---

[1] This was not the first time Ree and Chaney had argued. They were once in a relationship, and days before, according to Ree, Chaney had hit her on the head because Chaney was upset that she was dating someone else. Chaney had also severely injured a friend of Ree's months earlier.

could not recall whether Chaney had ignited the torch. But she told the jury that she was scared Chaney would burn and kill her. Ree said she reached into a closet to grab anything to defend herself, and she managed to find a knife. She testified that she again warned Chaney to leave her alone, but he "kept walking towards [her]." *Id.* at 273. And when he did, she stabbed him. The stab wound caused Chaney's death, and the forensic pathologist who performed Chaney's autopsy testified that the knife traveled from front to back, left to right, and downward.

After Ree stabbed Chaney, she told everyone in the house to call the police. She then left the house with Williams and the knife.[2] While they were stopped at a Wal-Mart refueling Williams's car, Ree's friend Tiffany Bowers called Ree "to see what she was doing." *Id.* at 163. Ree told Bowers that she had done "something really bad and . . . was really scared," but that she could not talk about it over the phone. *Id.* at 276. Bowers invited Ree to her home, and when Ree and Williams arrived, Ree told Bowers that she stabbed Chaney because he tried to burn her with the torch.

Sometime later, Ree and Williams left Bowers's home to purchase marijuana. On their drive back, Ree threw the knife out the car window. Ree returned to Bowers's home, and Ree's boyfriend, Christopher Del Rio, arrived shortly thereafter. Ree told Del Rio that she stabbed Chaney because he tried to burn her, and she left Bowers's home with him.

---

[2] Ree and Williams offered different accounts of who retrieved the knife from the house: Ree testified that Williams retrieved it, and Williams testified that Ree retrieved it.

Meanwhile, back at the Broken Arrow house, officers arrived after Allen and Edens called the police. Edens had performed CPR on Chaney, and she testified that she did not see a torch next to Chaney when she saw him in the hallway. The officers also did not locate a torch in the hallway, but they found one in a bedroom. Ree testified that she did not move the torch and that she did not know how the torch ended up in the bedroom.

Williams saw Ree once more the following morning. He testified that Ree told him she was leaving Oklahoma and that Del Rio knew people in Texas or Mexico. A few days later, Ree arrived at her sister's home in Texas. She then self-surrendered after the United States Marshals Service advised her sister that Ree was wanted for first-degree murder.

At trial, Bowers testified, without objection, that Ree did not appear remorseful on the day Chaney died. Bowers also testified that Ree did not appear remorseful approximately six weeks after Chaney's death, when Bowers spent time around Ree while they were both in state custody. Ree's counsel objected to this latter testimony on relevance grounds, arguing that "anything that happened a month and a half or two months later would be entirely irrelevant." *Id.* at 171. The district court overruled the objection.

At the close of trial, the district court instructed the jury on first-degree murder, second-degree murder, voluntary manslaughter, and involuntary manslaughter. As relevant here, the district court instructed the jury that second-degree murder required the government to prove beyond a reasonable doubt that Ree

4

killed Chaney with malice aforethought, which it defined for the jury as "to kill another person deliberately and intentionally[] or to act with callous and wanton disregard for human life." R. vol. 1, 138. Because Ree asserted that she acted in self-defense, the district court also provided a self-defense instruction. That instruction informed the jurors that they could convict only if the government proved beyond a reasonable doubt that Ree did not act in self-defense or that "it was not reasonable for [Ree] to think that the force she used was necessary to defend herself against an immediate threat." *Id.* at 139. The jury convicted Ree of second-degree murder, finding that Ree killed Chaney with malice aforethought and rejecting Ree's assertion of self-defense. The district court later sentenced her to 365 months in prison and five years of supervised release.

Ree now appeals.

## Analysis

Ree argues that the district court erred in allowing Bowers to testify that Ree did not appear remorseful approximately six weeks after Chaney's death because such testimony was irrelevant under Federal Rule of Evidence 401. The government counters that Bowers's testimony was relevant to show Ree's state of mind when she killed Chaney. We need not resolve this dispute, however, because we agree with the government that any abuse of discretion in admitting Bowers's testimony was harmless. *See United States v. Chavez*, 976 F.3d 1178, 1204 (10th Cir. 2020) (explaining that nonconstitutional challenge to district court's admission of evidence is subject to harmless-error review).

The erroneous admission of irrelevant evidence is harmless if it did not affect a party's substantial rights. *See id.* A party's substantial rights are affected only if the error, considered in the context of the entire record, had "a substantial influence on the outcome of a trial or leaves one in grave doubt as to whether it had such effect." *Id.* (quoting *United States v. Richter*, 796 F.3d 1173, 1197 (10th Cir. 2015)). The government bears the burden of demonstrating, by a preponderance of the evidence, that the nonconstitutional evidentiary error was harmless. *United States v. Andasola*, 13 F.4th 1011, 1017 (10th Cir. 2021).

Here, the government asserts that it presented more than sufficient evidence of Ree's guilt and the admission of Bowers's lack-of-remorse testimony was harmless.[3] The disputed elements of Ree's crime concerned Ree's state of mind, specifically whether she acted with malice aforethought or in self-defense. The government first asserts that its evidence supporting the former was overwhelming. It points to Allen's and Edens's testimony that Ree threatened to stab Chaney in the moments preceding the fatal incident. It also relies on Ree's failure to call the police after she stabbed Chaney, and the stab wound's front to back, left to right, and downward trajectory—a path of travel that, according to the government, was inconsistent with Ree's testimony that "it was almost like [Chaney] walked towards the knife." R. vol. 3, 273. The government additionally notes Ree's efforts to hide the knife she used to

---

[3] Because the issue before us is whether Bowers's testimony affected Ree's conviction for second-degree murder, we consider the elements for that crime only. *See, e.g., United States v. Vallo*, 238 F.3d 1242, 1246–47 (10th Cir. 2001).

stab Chaney and her flight to Texas. And it emphasizes that Ree, if truly afraid for her life, had an opportunity to leave the house with Williams, but she instead chose to follow Chaney into the hallway where she ultimately stabbed him.

The government further contends that it presented overwhelming evidence to rebut Ree's assertion of self-defense. It highlights, for example, the fact that the torch Ree claimed Chaney held in the hallway[4] wasn't found next to Chaney's body but in a nearby bedroom.[5] The government also stresses that Chaney never burned or hurt Ree and that Ree could have requested help at any time from many individuals in the house, including Williams, who indeed told Ree they could leave the house. And finally, the government explains that Ree could have turned around and left the hallway when she encountered Chaney.

In reply, Ree first argues that Bowers's testimony posed a serious risk of unfair prejudice because the testimony tended to malign her character and may have therefore caused the jury to convict on improper grounds.[6] But our review of the record reveals that Bowers's testimony was not as significant as Ree contends. Though Ree describes Bowers's testimony as substantial, at bottom, the challenged testimony consisted of a single question and a single corresponding answer: The

---

[4] Notably, Ree couldn't remember whether the torch was lit.

[5] Further reinforcing this point, Edens—who administered CPR to Chaney—testified that she did not see a torch next to Chaney in the hallway.

[6] In her reply brief, Ree takes significant issue with the government's assertion that Bowers's testimony was harmless because Ree does not challenge Bowers's initial testimony that Ree did not appear remorseful on the day of Chaney's death. Because the government's argument on this point is not material to our resolution of this case, we need not further address Ree's reply argument.

government asked Bowers whether Ree appeared remorseful for Chaney's death when she saw Ree in state custody approximately six weeks after the incident. Bowers said that Ree did not. No more was made of Bowers's testimony throughout the trial, and as the government observes, neither party referenced the testimony during closing arguments.

Next, Ree contends that she presented a substantial case of self-defense and that absent Bowers's testimony, the jury could have acquitted her or convicted her of a lesser-included offense such as voluntary or involuntary manslaughter. In support, she draws our attention to Chaney's violent behavior and repeated threats with the torch. She also invokes much of her own testimony and argues that her account of self-defense is more plausible than the government's alternative theories. In particular, Ree notes that the evidence showed that she consistently told others she stabbed Chaney because Chaney tried to burn her with the torch. And she explains that a stab wound to the chest travelling front to back is consistent with Chaney having approached her in the hallway.

But Ree fails to rebut the record evidence that strongly supports a finding of malice aforethought and discredits her assertion of self-defense. She does not challenge, for instance, that she threatened to stab and hurt Chaney; that she could have left the house with Williams or requested help from others; that despite fearing for her life, she chose to walk through the same hallway that Chaney had entered only moments earlier; that she failed to turn away from the hallway when Chaney allegedly came towards her with the torch; that she failed to call the police after

8

seriously injuring Chaney; that the torch Ree claimed Chaney held in the hallway was neither found nor seen next to Chaney's body; or that Ree fled days after the fatal incident. This undisputed evidence amply supports the jury's determination that the government proved beyond a reasonable doubt that Ree killed Chaney deliberately and intentionally or with callous and wanton disregard for human life. It also supports the jury's finding that the government proved beyond a reasonable doubt that Ree did not act in self-defense or that it was not reasonable for Ree to think that the force she used was necessary to defend herself against Chaney. And in light of this strong evidence of Ree's guilt, we are not convinced that Bowers's testimony about Ree's apparent lack of remorse approximately six weeks after the incident played a significant role in the jury's findings. *See United States v. Hardwell*, 80 F.3d 1471, 1492 (10th Cir. 1996) (concluding that admission of one challenged piece of evidence was harmless because its admission "could not have prejudiced [the defendant], against whom the evidence was overwhelming").

Ree nevertheless maintains that the jury could have interpreted some of the evidence the government relies on "as too equivocal to negate reasonable doubt." Rep. Br. 17. To be sure, a jury could make more than one inference from the evidence introduced at trial. But as Ree herself acknowledges, here, "there was also significant evidence supporting the government's theory of the case." *Id.* And the jury concluded, after reviewing all the evidence, that the government proved beyond a reasonable doubt that Ree killed Chaney with malice aforethought and not in self-defense. Given the strength of the evidence supporting these findings, we cannot say

9

that Bowers's testimony had a substantial influence on the outcome of Ree's trial; nor does it leave us in grave doubt as to whether it had such effect. Any error in admitting Bowers's testimony was harmless.

## Conclusion

Finding no reversible error, we affirm Ree's conviction.

Entered for the Court


Nancy L. Moritz
Circuit Judge